[Civ. No. 5930.   Third Appellate District.—November 26, 1937.]

JOHN GIOSCIO, Respondent, v. FRED LAUTEN-SCHLAGER et al., Defendants; F. S. HYDE, Appellant.

C. V. Caldwell, Prentiss Moore and M. A. Fleming for Appellant.

E. Llewellyn Overholt for Respondent.

PULLEN, P. J.—The action out of which this appeal arose was commenced by the filing of a complaint in the ordinary form to quiet title to the property involved. The answer of appellant Hyde denied plaintiff's allegations of ownership and set up as a special defense that the defendants purchased the property for an adequate and fair consideration and that plaintiff had been guilty of laches in failing to assert his claim to the property within a reasonable time, and further pleaded adverse possession, and that said action was barred by the appropriate sections of the Code of Civil Procedure. Also in addition to a denial of plaintiff's ownership of the property defendants allege ownership in themselves by virtue of certain conveyances by Gioscio and his wife, which conveyances were duly recorded in the office of the county recorder of the county of Los Angeles.

Plaintiff John Gioscio and defendant Beatrice Gioscio are husband and wife, although for the greater part of their married life they have lived separate and apart.

They came to California some time prior to 1911, and shortly thereafter plaintiff purchased for cash the property here in question, taking title to the same in his name as grantee.

In June, 1925, Gioscio left California and has never returned to this state. On June 8, 1927, a quitclaim deed dated June 6, 1927, in which Mrs. Gioscio was named as grantee,

and purporting to have been signed by plaintiff in Los Angeles on that date, and acknowledged, was recorded in the county of Los Angeles. On June 6, 1927, another deed purporting to have been signed by both Mr. and Mrs. Gioscio was placed on record conveying this property to Mary Emmanuel as grantee. By mesne conveyances the title now appears of record in the name of Mr. Frank Hyde, appellant herein. The defendants Lautenschlagers claimed no interest in the property. ,

At the trial plaintiff denied the execution of the deeds under which the defendants claim title, alleging said deeds were forged and in its finding the court found that the purported signatures of the plaintiff appearing on the deeds were forgeries but the signatures of Beatrice Gioscio were genuine, and that plaintiff was not barred by any statute of limitations, and that defendant had acquired no title by adverse possession. Just who was responsible for the forgeries does not appear, Mrs. Gioscio and Emmanuel each accusing the other.

On March 8, 1927, Mrs. Gioscio contracted to sell the property to the Emmanuels. In 1927 the Emmanuels negotiated a loan of $2,500 on the property to pay the balance due on the contract, securing the same by a deed of trust. This trust deed was not paid when due, and at the foreclosure sale in October, 1929, appellant Hyde became the purchaser of the property. Plaintiff did not learn of said original sale or the trustees' sale until the fall of 1931. Upon discovering this fact plaintiff caused this action to recover title and possession of the property to be filed January 19, 1932.

The first point urged by appellant is that of adverse possession, claiming that from the 8th day of March, 1926, when Mrs. Emmanuel went into possession, to January 19, 1932, when plaintiff filed his action, more than five years had elapsed. However, the Emmanuels, purchasing under contract, were not holding adversely to Gioscio, and therefore the hostile interest necessary to constitute an adverse possession was lacking. The Emmanuels acquired title, if at all, on June 22, 1927, when they made their final payment to Mrs. Gioscio, which would be the inception of the adverse possession, if any. This action by Gioscio was filed June 19, 1932, some four and one-half years later.

Section 322 of the Code of Civil Procedure provides that an occupant who enters into possession of property under

claim of title, exclusive of other right, such claim being based upon a written instrument, must establish continued occupation and possession of the property under such claim for five years, but for a considerable portion of that time were vendees under the contract of sale, requiring them to hold possession in subordination to the true title. ■ To constitute adverse possession the occupation must be actual, open, notorious and exclusive, continuous in time and interest, and must be under a claim of right to hold the land against him who was seized, and the person against whom it is held must have knowledge or the means of knowledge of such occupation and claim. To thus acquire title all of the elements of adverse possession must exist. (*Under* v. *Mooney*, 63 Cal. 586, 589 [49 Am. Rep. 100] ; *Madson* v. *Cohn*, 122 Cal. App. 704 [10 Pac. (2d) 531] ; *San Francisco* v. *Fulde*, 37 Cal. 349 [99 Am. Dec. 278].)

Appellant urges that title by adverse possession can be obtained by one holding under a contract to convey, and among other cases, cites *Love* v. *Watkins*, 40 Cal. 547 [6 Am. Rep. 624] ; this case as well as the other cases, of appellant do not so hold. In *Love* v. *Watkins, supra,* the vendee under the contract to convey had fully performed, and in that situation it is true the court would in equity regard the vendee as the absolute owner of an indefeasible estate, but in the present instance Mrs. Emmanuel did not fully perform her contract of purchase until about June 20, 1927, less than five years prior to the commencement of this action.

■ Nor is plaintiff estopped by his own conduct to set up his title against appellant. The evidence shows, and the court found that plaintiff acted with due diligence. He left Los Angeles in 1925 and never returned; he left the premises to be used as a home by defendant Mrs. Gioscio and her children, and through a daughter he sent money each month for the care of his wife and family, in addition to considerable sums sent for the payment of taxes, assessments and repairs on the property.

■ There is no question but what the forged deed is absolutely void, and even in the case of a person claiming in good faith thereunder, is inoperative, either to divest the purported grantor's title or to vest any right or title in the grantee or claimant (8 R. C. L. 1029; *Blaisdell* v. *Leach*, 101 Cal. 405 [35 Pac. 1019, 40 Am. St. Rep. 65] ; 8 Cal.

Jur. 218, sec. 100), and being a void deed it could not oper-ate as an estoppel (9 Cal. Jur. 218; *Holmes* v. *Salamanca etc. Co.*, 5 Cal. App. 659 [91 Pac. 160]), nor would the fact that it was duly recorded create an estoppel. This was es-tablished in the case of *Hakes Investment Co.* v. *Lyons*, 166 Cal. 557 [137 Pac. 911], in which a minor executed a deed to real property which was wholly void, and although the property had passed into the hands of innocent purchasers for value, the successors in interest of the minor were per-mitted, several years later, to take the property from the innocent purchasers.

Nor does the doctrine of equitable estoppel apply, first because of the void deed, and secondly, for the further reason that plaintiff personally never received any benefit from the money paid by the Emmanuels; nor did plaintiff ever make any admissions or declarations or do any act with the intention of deceiving defendants with regard to the title. As the court said in *Davis* v. *Davis*, 26 Cal. 23 [85 Am. Dec. 157]:

"In order to constitute an equitable estoppel with respect to the title of property, it must appear that the party to be estopped has made admissions or declarations, or done acts with the intention of deceiving the other party with regard to the title, or with such carelessness or culpable negligence as to amount to a constructive fraud, and that at the time of making the admissions or declarations, or doing the act, he was apprised of the true state of his own title, and that the other party was not only destitute of all knowledge of the true state of the title, but also of all convenient or ready means of acquiring such knowledge."

The case of *Meley* v. *Collins*, 41 Cal. 663 [10 Am. Rep. 279], deals with a situation somewhat similar to the case at bar, and the court there held in accordance with the con-tention of appellant here.

An examination of the facts as presented by the record and the law as applied thereto, support the judgment of the trial court.

The judgment is affirmed.

Thompson, J., and Plummer, J., concurred.